Filed 3/12/13  P. v. Lopez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D060439 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN281561) |
| JOSEPH MARCOS LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

INTRODUCTION

A jury convicted Joseph Marcos Lopez of evading a police officer with reckless driving (Veh. Code,[1] § 2800.2, subd. (a)) (reckless evading).  In addition, he pleaded guilty to driving without a license (§ 12500, subd. (a)), and he admitted having a prior

---

[1]    Further statutory references are also to the Vehicle Code unless otherwise stated.

strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and a prior prison conviction (Pen. Code, §§ 667.5, subd. (b), 668).

At the sentencing hearing, the trial court struck the punishment for the prior prison conviction finding, but declined Lopez's invitation to dismiss the prior strike conviction finding. The trial court sentenced him to six years in prison, consisting of the upper term of three years for the reckless evading conviction doubled for the prior strike conviction.[2] The trial court also awarded Lopez 177 days of conduct credit under former Penal Code sections 2933 (Stats. 2010, ch. 426, § 1, eff. Sept. 28, 2010) and 4019 (Stats. 2010, ch. 426, § 2, eff. Sept. 28, 2010).

Lopez appeals, contending we must reverse his reckless evading conviction because the trial court failed to instruct the jury on reckless driving as a lesser included offense. He further contends the trial court abused its discretion by failing to dismiss the prior strike conviction finding and violated his equal protection rights by not awarding him additional presentence conduct credits under current Penal Code section 4019 (amended by Stats. 2011, ch. 15, § 482, eff. Apr. 4, 2011, operative Oct. 1, 2011; Stats. 2011, ch. 39, § 53, eff. June 30, 2011, operative Oct. 1, 2011; Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, eff. Sept. 21, 2011, operative Oct. 1, 2011). We conclude there is no merit to these contentions and affirm the judgment.

---

[2]    The trial court sentenced Lopez to time served for his driving without a license conviction.

2

BACKGROUND

Oceanside police officers Todd Ringrose and Duane Schott were outside a Carlsbad home surveilling a vehicle. Ringrose was in uniform and was driving an unmarked police car with a light bar mounted behind the rear visor so that the lights were visible in the windshield. In addition, when the lights were activated, the car's headlights and strobe lights on the side-view mirrors flashed. Schott was also in uniform and was driving a marked police car with overhead lights.

Ringrose previously determined Lopez had access to the vehicle and did not have a valid driver's license. At around 6:30 a.m., Ringrose saw Lopez get into the vehicle, back out, and head east through a parking lot. Ringrose drove ahead to an intersection in the parking lot and waited for Lopez. Lopez stopped at the intersection facing Ringrose and the two made eye contact from about seven to 10 feet away. Ringrose recognized Lopez from a previously obtained Department of Motor Vehicles photograph. Lopez had a large tattoo of the letters "SD" across the front of his neck.

Lopez drove north and exited the parking lot onto a street. Ringrose radioed Schott to advise him the vehicle was moving. Ringrose followed one or two car lengths behind Lopez. Schott followed 200 to 300 feet behind Ringrose.

When Lopez turned left onto a street without stopping for a stop sign, Ringrose activated his car's lights and Schott activated his car's lights and sirens. Lopez accelerated through a roundabout and turned right onto another street without stopping for a red light, even though it was a blind corner and there were two approaching cars

3

with the right of way.  Lopez sped toward the next intersection and once again turned right without stopping for a red light.

He briefly slowed the vehicle, causing Ringrose to think he was going to pull over and flee on foot, or make a U-turn or some other maneuver.  Instead, he moved the vehicle into the fast lane and rapidly accelerated to a speed Ringrose estimated exceeded 65 miles per hour.  He then crossed the double yellow lines of a simulated island and drove head on into traffic for several hundred feet.  Ringrose followed, straddling the double yellow lines to warn both directions of traffic.

The oncoming traffic yielded, stopping at an upcoming intersection.  Ringrose backed off as Lopez approached the intersection, which also had a blind corner.  Lopez turned left from the wrong side of one street onto the wrong side of another.  A large oncoming vehicle braked hard to avoid Lopez.  Lopez came within a car's length of colliding with the vehicle and within two or three car lengths of colliding with another.  Lopez continued traveling on the wrong side of the road for about 200 to 250 feet.

Ringrose and Schott turned left onto the road to follow Lopez, but Ringrose cancelled the pursuit after seeing a school up ahead.  Lopez turned right near the school and continued out of sight.  The pursuit covered approximately one mile and lasted one to two minutes.

Ringrose and Schott returned to Lopez's home and spoke with the woman babysitting Lopez's children.  She initially denied seeing Lopez that morning, but later said he had left the home shortly after she arrived.  She told the officers Lopez had just called her and told her not to open the door because police officers had just chased him.

4

At trial, however, she denied telling the officers she had spoken with Lopez by phone that morning or that he had told her not to answer the door because of the police chase.

DISCUSSION

I

*Failure To Instruct on Reckless Driving as Lesser Included Offense*

A

The reckless evading charge alleged Lopez "did unlawfully, while operating a motor vehicle and hearing a siren and seeing a lighted red lamp emanating from a distinctively marked vehicle operated by a peace officer, evade, flee and otherwise attempt to elude the pursuing peace officers' motor vehicle, and in doing so did drive and attempt to drive a vehicle in willful and wanton disregard for the safety of persons and property in violation of [section 2800.2(a)]."[3]  During the jury instruction conference,

---

[3]     Section 2800.2, subdivision (a), provides:  "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine."

Section 2800.1, subdivision (a), provides:  "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist:  [¶]  (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶]  (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.  [¶]  (3) The peace officer's motor vehicle is distinctively marked.  [¶]  (4) The

defense counsel requested the trial court instruct the jury on reckless driving in violation of section 23103, subdivision (a),[4] as a lesser included offense of reckless evading. The trial court determined reckless driving was not necessarily a lesser included offense and denied the request.

B

Lopez contends the trial court erred in its determination and its denial of the requested instruction requires us to reverse his conviction. We disagree.

A trial court must instruct the jury on a lesser included offense if there is substantial evidence to support it. A lesser offense is included in a greater offense "if *either* (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), or (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*People v. Parson* (2008) 44 Cal.4th 332, 349.) Where, as here, the charging allegations echo the statutory language, the test is the same: whether commission of the greater offense necessarily requires commission of the lesser offense. (*People v. Wolcott* (1983) 34 Cal.3d 92, 99.)

---

peace officer's motor vehicle is operated by a peace officer, as defined in [Penal Code section 830 et seq.], and that peace officer is wearing a distinctive uniform."

[4] Section 23103, subdivision (a), provides: "A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

The crime of reckless driving occurs when a person "drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property." (§ 23103, subd. (a).) For purposes of this crime, the "willful or wanton disregard" element requires knowledge one's actions present a substantial and unjustifiable risk of harm and intentional ignorance of that risk. (*People v. Schumacher* (1961) 194 Cal.App.2d 335, 338-340; *People v. McNutt* (1940) 40 Cal.App.2d Supp. 835, 837-838; CALCRIM No. 2200.) Neither negligent nor grossly negligent conduct is sufficient to satisfy this requirement. (*People v. Allison* (1951) 101 Cal.App.2d Supp. 932, 935.) Violation of a statutory duty is also not sufficient to satisfy this requirement. (*People v. Young* (1942) 20 Cal.2d 832, 837-838.)

The crime of reckless evading occurs when a person, with the intent to evade, operates a motor vehicle with willful or wanton disregard for the safety of persons or property while fleeing from or attempting to elude a pursuing peace officer who is wearing a distinctive uniform and is driving a distinctively marked vehicle exhibiting at least one lighted red lamp visible from the front and sounding a siren as reasonably necessary. (§§ 2800.1, subd. (a), 2800.2, subd. (a).) For purposes of this crime, "willful or wanton disregard for the safety of persons or property" may include "driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).) Thus, the willful or wanton disregard element of the crime of reckless evading, unlike the crime reckless driving, may be satisfied by negligent or grossly negligent conduct, or by violations of a statutory

7

duty. Accordingly, the trial court correctly determined a person can commit the crime of reckless evading without necessarily committing the crime of reckless driving and the trial court did not err in declining to instruct on reckless driving as a lesser included offense.

C

Moreover, contrary to Lopez's assertion, the trial court's decision not to instruct the jury on the crime of reckless driving did not deprive him of his constitutional right to defend himself on the theory he did not intentionally evade a peace officer. Intent to evade and evading are elements the prosecution had to prove to establish the crime of reckless evading. (§§ 2800.1, subd. (a), 2800.2, subd. (a); CALCRIM No. 2181.) Lopez could have defended himself on the theory the prosecutor had not proved these elements beyond a reasonable doubt regardless of whether the trial court instructed the jury on the crime of reckless driving.

II

*Failure To Dismiss Prior Strike Conviction Finding*

A

Before the sentencing hearing, Lopez filed a motion inviting the trial court to exercise its discretion to dismiss the prior strike conviction finding. The trial court declined the invitation, finding that, notwithstanding Lopez's recent commendable efforts to rehabilitate himself, Lopez did not fall outside the Three Strikes sentencing scheme because of his prior criminal history and the seriousness of the conduct underlying the reckless evading conviction.

8

B

Lopez contends the trial court abused its discretion by failing to dismiss the finding. We discern no abuse of discretion on this record. The law applicable to decisions to dismiss prior strike conviction findings is now well established. A trial court has the discretion to dismiss a prior strike conviction finding in the furtherance of justice under Penal Code section 1385, subdivision (a). (*People v. Williams* (1998) 17 Cal.4th 148, 158.) However, the trial court's discretion is limited and it must exercise its discretion in strict compliance with Penal Code section 1385, subdivision (a). (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530.) Specifically, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, at p. 161.)

We review a trial court's decision not to dismiss a prior strike conviction finding for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 371, 374.) As we presume a sentence conforming to the Three Strikes law is rational and proper, a trial court's decision not to dismiss a prior strike conviction finding will only be an abuse of discretion in limited circumstances, such as where the trial court was not aware of its discretion, the trial court considered impermissible factors, or a sentence under the Three

9

Strikes law would, as a matter of law, produce an arbitrary, capricious, or patently absurd result under the specific facts of the case. (*Id*. at p. 378.)

The party attacking the trial court's decision has the burden to clearly show the decision was irrational or arbitrary. Absent this showing, we presume the trial court acted to achieve legitimate sentencing objectives and will not reverse its decision. (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376–377.) Moreover, because we may not substitute our judgment for the trial court's judgment, we will not reverse the trial court's decision merely because reasonable people disagree. Rather, we will only reverse the trial court's decision if it is so irrational or arbitrary no reasonable person could agree with it. (*Id*. at p. 377.)

Here, Lopez emphasizes his remorse, recent rehabilitative efforts, and positive prospects to support his assertion the trial court's decision not to dismiss the prior strike conviction finding fell outside the bounds of reason. While the record indicates Lopez had made commendable strides to turn his life around, including turning himself in shortly after the incident, moving away from gang influences, and obtaining gainful employment for the first time in his life so he could support his children, these were not the only factors the trial court had to consider.

The trial court also had to consider Lopez's criminal history, which the parties agreed at the sentencing hearing was "horrendous." It included juvenile adjudications for battery, assault, assault with a deadly weapon, and robbery, and adult convictions for robbery in 2002 and false imprisonment in 2002. According to the probation report, the adult robbery conviction, which was the prior strike conviction, involved Lopez stealing a

vehicle at gunpoint. When police officers went to his home to investigate the matter, he fled and officers had to chase him for some time before a police canine eventually captured him. As the prosecutor indicated at the sentencing hearing, it was " a very egregious, very serious, very dangerous prior."

Moreover, Lopez committed additional crimes after the robbery, including the false imprisonment, in which he and others took a woman's money and car, held her at gunpoint, beat her multiple times, forced her into and drove her around in the trunk of her car and forced her to orally copulate someone. The trial court appropriately described Lopez's past crimes as "horrific" and Lopez was still on parole for some of them until shortly before he committed the reckless evading crime.

While the conduct underlying Lopez's reckless evading crime is not as severe as the conduct underlying his prior strike conviction and some of his other crimes, it had great potential to harm others. As repeatedly acknowledged at the sentencing hearing, it was fortunate Lopez did not collide with another vehicle or a pedestrian and seriously hurt or kill someone.

Further, Lopez's future prospects at the time of the sentencing, although certainly improving, were not as overwhelmingly positive as Lopez asserts. Although he had a supportive family and had been successfully employed for the first time in his life, his employment experience was recent and limited, he had no high school diploma or a general educational development certificate, and he was an admitted addict. Given the nature of Lopez's past and present crimes, his background, and his guarded future prospects as reflected in the record, we cannot conclude the trial court's decision to

11

decline Lopez's invitation to dismiss his prior strike conviction was so irrational or arbitrary no reasonable person could agree with it.

III

*Failure To Award Additional Presentence Conduct Credits*

At the time of Lopez's sentencing, former Penal Code sections 2933 and 4019 allowed inmates like him, who had a prior serious or violent felony conviction, but whose current commitment offense was not a serious or violent felony, to earn up to two days of presentence conduct credit for each six-day period of confinement. (Former Pen. Code, §§ 2933, subd. (e)(3), 4019, subds. (b) & (c).) Consequently, if an inmate earned all available presentence conduct credit, the inmate would be deemed to have served six days for every four days confined. (Former Pen. Code, § 4019, subd. (f).)

The Legislature subsequently deleted Penal Code section 2933, subdivision (e)(3) and amended Penal Code section 4019 so that inmates with a prior serious or violent felony conviction, but whose current commitment offense was not for a violent felony, may earn up to two days of presentence conduct credit for each four-day period of confinement. (Current Pen. Code, § 4019 (b) & (c).) Consequently, if an inmate earned all available presentence conduct credit, the inmate would be deemed to have served four days for every two days confined. (Current Pen. Code, § 4019, subd. (f).) Although the current statute expressly applies prospectively to inmates whose crimes were committed on or after October 1, 2011, Lopez contends equal protection principles compel us to apply the current statute retroactively to him and award him additional conduct credits.

12

In *People v. Brown* (2012) 54 Cal.4th 314, the California Supreme Court held equal protection principles did not require retroactive application of a version of Penal Code section 4019 in effect from January 25, 2010, to September 28, 2010.[5] (*People v. Brown*, *supra*, 54 Cal.4th at pp. 317-318.) In reaching this conclusion, the Supreme Court explained the purpose of the increased conduct credits is to affect inmates' behavior by providing incentives for them to be productive and cooperative. (*Id*. at pp. 327-329.) This purpose is "not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former [Penal Code] section 4019 took effect are not similarly situated necessarily follows." (*Id*. at pp. 328–329.)

In its subsequent decision in *People v. Lara* (2012) 54 Cal.4th 896, the Supreme Court applied *Brown* to reject the precise equal protection issue Lopez raises in this case. (*People v. Lara*, *supra*, 54 Cal.4th at p. 906, fn. 9.) We are bound by the Supreme Court's decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, we conclude equal protection principles do not require us to apply the current version of Penal Code section 4019 to Lopez and he is not entitled to additional presentence conduct credits.

---

5      (Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 28, § 50, amended by Stats. 2010, ch. 426, § 2, Stats. 2011, ch. 15, § 482, Stats. 2011, ch. 39, § 53, & Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 35.)

13

DISPOSITION

The judgment is affirmed.


                                                                    McCONNELL, P. J.

WE CONCUR:


NARES, J.


McDONALD, J.

14